OPINION OF THE COURT
David B. Saxe, J.
Up in Inwood Park, located at the northern tip of Manhat *579 tan, is a historic attraction known as the Indian Caves. Here legend has it, Indian tribes dried and stored their haul from the treacherous Spuyten Duyvil currents.
One summer day in July of 1977, the plaintiffs Iris Guillet, a student and her past semester teacher Robert Rose, embarked on a journey to photograph the Indian Caves for use in Mr. Rose’s next term’s earth science class.
The day was warm and bright. Both were dressed casually. Ms. Guillet was wearing sandals; Mr. Rose, an old sweatshirt, jeans and sneakers. Upon entering the park, they took a path through a remote, wooded and undeveloped part of the park to the Indian Caves. More than any other park in Manhattan this area of Inwood Park is treated as a natural forest and wildlife preserve.
The plaintiffs left the park path near the caves and walked up a steep wooded hill. Suddenly, they heard an explosion and down upon both of them came a visibly dead tree.
Both individuals were injured and sued the City of New York. They claimed that the city, whose responsibility it is to maintain city parks, was negligent because it allowed a dead tree to stand. They argued that the city had constructive notice of the tree’s inert condition for a long time. The city countered that it had utilized all reasonable care in its maintenance of this park which it claimed was a natural preserve. Thus, it contended, the type of care that it might be obliged to take with respect to a dead tree in, let us say Central Park, would not obtain in natural woodland area such as Inwood Park. Finally, the city said that they had no notice of the tree’s defective condition.
In a bifurcated trial on the issue of liability, I charged the jury with respect to the applicable law and presented special interrogatories in order to assist them with their findings.
The threshold issue presented to the jury swirled around the definition of the word "hiking”. This was so because General Obligations Law § 9-103 provides that an owner of land has no duty to keep the land safe for use by others for a variety of activities, one of which is "hiking”. An owner’s negligence, if any, is immaterial to the issue of liability if a plaintiff is found to be engaging in one of the activities specified in General Obligations Law § 9-103. Under the statute, only an owner’s "willful” or "malicious” failure to guard the premises or warn against hazards is actionable. Here, the proof showed that the defendant City of New York was at *580 most negligent. Not surprisingly then, the City of New York argued that Guillet and Rose were engaged in a hiking activity within the meaning of General Obligations Law § 9-103 when the tree fell and injured them. The plaintiffs argued with equal vigor that they were simply engaged in a pleasant summer walk with the purpose of taking pictures of the caves. Not being dressed for hiking, not having a compass or carrying backpacks with them, the plaintiffs urged that a finding that they were on a hike would be inappropriate. The plaintiffs therefore contended that since they were not engaged in a hike, nor in any other activity listed in General Obligations Law § 9-103, the normal common-law standard of negligence applied in this case. Based on the evidence submitted at trial, I determined that a factual issue existed on this point which should be decided by the jury.
After determining that General Obligations Law § 9-103 applied to municipal lands (Sega v State of New York, 60 NY2d 183 [1983]), I defined the term "hiking” for the jury. Since there was no New York case on point, I relied on a California appellate ruling (Gerkin v Santa Clara Val. Water Dist., 95 Cal App 3d 1022, 157 Cal Rptr 612 [Ct App, 1st Dist, Div 4 1979]) that construed a statute similar to our General Obligations Law § 9-103, and explored the meaning of the term "hiking”. Based on Gerkin (supra) a special verdict question was put to the jury with the following definition: "hiking:” means more than merely walking; it connotes the taking of a long walk for pleasure or exercise. A determination as to whether an individual is engaged in hiking must be made through a consideration of the totality of facts and circumstances, including the path taken, the length and purpose of the journey and topography of the property. While the subjective intent of the plaintiffs is not controlling, it is relevant to show purpose. So, the fact that plaintiff might claim that they were not on a hike is not controlling on you nor is the fact that the city claims they were hiking controlling on you. You should, as the definition indicates consider the totality of the facts and circumstances in this case in order to determine if the plaintiffs were on a hike.”
The jury was then directed to first consider whether, based upon the evidence presented at trial, the plaintiffs were "hiking” in Inwood Park on the date of the accident. The jury answered this special verdict question "yes” and, as instructed, returned to the courtroom, ending their deliberation. *581 I then instructed the clerk to enter a judgment dismissing the complaint thus ending the matter.
This decision is offered as a guide for future controversies under General Obligations Law § 9-103 especially those that might turn on a definition of the term "hiking”.